UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DOROTHY BAILEY,**

      Plaintiff,

v.

**CITY OF PORT HURON,** a Municipal
Corporation, **NEIL ROSSOW,** individually,
and in his capacity as Captain of the
City of Port Huron Police Department,
**WILLIAM CORBETT,** individually and
in his capacity as Chief of Police of the
City of Port Huron, Jointly and Severally,

      Defendants.

Case No.  05-CV-71296

HONORABLE DENISE PAGE HOOD

_____/

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

This matter is before the Court on Defendants' Motion for Summary Judgment filed December 22, 2005.  Plaintiff filed a Response on January 16, 2006.

**II.   STATEMENT OF FACTS**

The Plaintiff, Dorothy Bailey, and her husband, Michael Bailey were involved in a motor vehicle accident on March 28, 2004 in Port Huron, Michigan, a Defendant in this case.  (Pl.'s Resp. at 1).  Mr. Bailey was a undercover narcotics officer with the St. Clair County Sheriff's Department. *Id.* At all relevant times Defendant Neil Rossow was employed by Defendant City of Port Huron as a police captain and Defendant William Corbett was employed by Defendant City of Port Huron as the Chief of Police.  (Compl. ¶¶ 5-6).  Plaintiff was subsequently arrested in connection with the

accident. *Id*. On or about April 30, 2004 Defendant Rossow, acting under the direction of Defendant Corbett, released Plaintiff's mug shot, where she lived and her husband's occupation. *Id*. ¶ 9. After the publishing of this information, Plaintiff was followed by two ex-convicts, both of which her husband had contact with as a narcotics officer; the Plaintiff's home and automobile has been vandalized; and she has, on several occasions, reported threatening conduct to the local police department. *Id*. ¶¶ 10-11. The Plaintiff filed the Complaint on April 4, 2005.

### III.   STANDARD OF REVIEW

The standard that must be satisfied to secure a dismissal via summary judgment is high. Pursuant to Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

### IV.   APPLICABLE LAW & ANALYSIS

#### A.   Plaintiff's claims under 42 U.S.C. § 1983

Plaintiff asserts a claim under 42 U.S.C. § 1983, for violation of her right to privacy. Liability under Section 1983 arises where a person, under color of law, causes a United States

citizen to be deprived of any rights, privileges, or immunities afforded by the Constitution. 42 U.S.C. § 1983.     "To successfully state a claim under 42 U.S.C. § 1983, a Plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). The following requirements must be met:  (1) the conduct at issue must have been under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and (3) the deprivation must have occurred without due process of law. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987).  As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a § 1983 claim.  *Graham v. Connor,* 490 U.S. 386, 393-394 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).  If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  It is undisputed, here, that the Defendants released the Plaintiff's name, her husband's occupation, and the name of Plaintiff's hometown to the media.  As such, the Court must only determine whether the release of the above information arises to the level of a constitutional violation.

Plaintiff alleges that the Defendants violated her Fourteenth Amendment right to privacy. (Compl. at 4).  A specific "right of privacy" guarantee is not found in the actual language of the United States Constitution, although the Supreme Court has held that "zones of privacy" may be created by other more specific constitutional guarantees.  *Paul v. Davis*, 424 U.S. 693, 712-713 (1976).  The Supreme Court has held:

> [P]ersonal rights found in this guarantee of personal privacy must be limited to those which are fundamental or implicit in the concept of ordered liberty... The activities

3

> detailed as being within this definition were... matters relating to marriage, procreation, contraception, family relationships, and child rearing and education. In these areas it has been held that there are limitations on the States' power to substantively regulate conduct.

*Cutshall v. Sundquist*, 193 F.3d 466, 480 (6th Cir. 1999), citing *Paul*, 424 U.S. 712-713 (internal quotations and citations omitted in original). The Sixth Circuit Court of Appeals has held that the right of privacy is embraced by both the United States Constitution and the State of Michigan. *Bichler v. Union Bank and Trust Co. of Grand Rapids*, 745 F.2d 1006, 1033 (6th Cir. 1984). The Sixth Circuit further held:

> [T]he individual's right to protection of his own good name reflects no more than our basic concept of the essential dignity and worth of every human being - a concept at the root of any decent system of ordered liberty. The protection of private personality, like the protection of life itself, is left primarily to the individual States under the Ninth and Tenth Amendments. But this does not mean that the right is entitled to any less recognition by this Court as a basis of our constitutional system.

*Id.*, citing *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966) (internal quotations omitted).

The right of privacy has been long recognized in Michigan. *Detroit Free Press, Inc. v. Oakland County Sheriff*, 164 Mich.App. 656, 663 (Mich.App. 1988). Michigan's common law right of privacy protects against four types of privacy invasions, namely: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation of the plaintiff's name or likeness, for the defendant's advantage. *Id.* at 663-664.

Under the intrusion theory, liability attaches when a defendant has "used an objectionable method to obtain secret and private information which the plaintiff has a right to keep private." *Id.*, citing *Tobin v. Civil Serv. Comm.*, 416 Mich. 661, 672-674 (Mich. 1982). The release of booking photographs have been held not to implicate the intrusion theory right of privacy. *Detroit Free*

*Press*, 164 Mich.App. at 664.  Furthermore, "[n]ames and addresses are not ordinarily personal, intimate, or embarrassing pieces of information."  *Tobin*, 416 Mich. at 672.

Under the public disclosure theory, "liability is precluded unless the matter publicized is not of legitimate concern to the public; there is no liability for giving publicity to matters already of public record or otherwise open to the public eye."  *Detroit Free Press*, 164 Mich.App. at 644.  The court in *Detroit Free Press* further held, "[t]hose who commit crime or are accused of it may not only seek publicity but may make every possible effort to avoid it, but they are nevertheless persons of public interest, concerning whom the public is entitled to be informed."  *Id*.

Under the false light theory, the false light in which the plaintiff was placed must be highly offensive to a reasonable person, and the defendant must have known of or acted in reckless disregard to the falsity of the publicized matter and the false light the plaintiff would be place in.  *Id*. at 666.  To recover under a false light theory the matter published regarding the plaintiff must be false.  *Id*.

Under the final right of privacy theory, appropriation, "any unauthorized use of a plaintiff's name or likeness, however inoffensive in itself, is actionable if that use results in a benefit to another."  *Battaglieri v. Mackinac Center For Public Policy*, 261 Mich.App. 269, 301 (Mich.App. 2004).  Liability under the appropriation theory is barred if the use of the plaintiff's name and/or likeness in a publication "concerns matters that are newsworthy or of legitimate public concern."  *Id*.  The release of booking photographs by a police department to the news media does not implicate any of the four right of privacy theories.  *Detroit Free Press*, 164 Mich.App. at 664.

As provided by the above case law, release by the Defendants of Plaintiff's mug shot does not implicate any of the right of privacy theories.  Release of the Plaintiff's name, her husband's

occupation and the city she lives in also does not give rise to a constitutional violation of Plaintiff's right to privacy. Under the first right of privacy theory, intrusion, the plaintiff's name and her hometown are not personal, intimate or embarrassing information, pursuant to *Tobin*, 416 Mich. at 672. As to the disclosure of Plaintiff's husband's occupation, Plaintiff has not shown that her husband's occupation was secret and private information that the Plaintiff has a right to keep private or that the Defendants used an objectionable method to obtain such information. As such, the Plaintiff cannot implicate the intrusion right of privacy theory. Plaintiff also cannot implicate the public disclosure theory, as the information publicized was a matter of public record. (Defs.' Mot. Summ. J., Ex. F). Since Plaintiff and her husband were accused of a crime, they are persons of public interest, of whom the public is entitled to be informed. The Plaintiff likewise does not have a right to privacy claim under the third theory, false light. The Plaintiff has not shown that the matter disclosed was false, that the light in which she was placed was highly offensive to a reasonable person, or that the Defendants knew of or acted in reckless disregard to the falsity of the publicized information. Finally, Plaintiff cannot show a right to privacy claim under the appropriation right of privacy theory. Liability here is barred as the use of Plaintiff's name and mug shot in the media was concerning a matter that was newsworthy or of legitimate public concern, namely the arrest of Plaintiff and her husband.

Plaintiff fails to show that the Defendants violated her right to privacy under any of the four theories. Since Plaintiff cannot show that Defendants violated her right of privacy and she has not alleged that the Defendants committed another constitutional violation, Plaintiff's claim pursuant to 42 U.S.C. § 1983 fails. If no constitutional violation has been found, the qualified immunity issue need not be addressed. *Saucier,* 533 U.S. at 201.

**B.     Freedom of Information Act**

The Defendants assert that the information was released pursuant to the Freedom of Information Act ("FOIA").  Plaintiff asserts that the Defendants should have known that the courts would not "tolerate the callous indifference that puts citizens, such as the Plaintiff, in a heightened-level of danger - a danger that is not generalized across the public at large."  (Pl.'s Resp. at 16-17). Plaintiff claims that the Defendants sought to damage the Plaintiff by releasing her picture and other confidential information.  *Id*. at 8.  Plaintiff further argues that the Defendants should have known that the release of such information would be a direct threat to her and her family.  *Id*.  Plaintiff claims that the Defendants do not have legal protection under the FOIA, citing, *Kallstrom v. City of Columbus*, 165 F.Supp.2d 686 (S.D. Ohio 2001) (*Kallstrom II)*.  Plaintiff specifically states:

1. The District Court in the remanded *Kallstrom* case granted plaintiff an injunction which prohibited the City from disclosing information from their personnel files without prior notice.  In the case at bar, Defendants gave no warning or advance notice to Plaintiff of their intentions to publicly link her to an undercover officer. ...

2. Despite the District Court's grants of intervention and motions for the Columbus, Ohio news media, subsequent Sixth Circuit Cases have specifically rejected the Court's reasoning on those matters.

(Pl.'s Resp. at 13).  Plaintiff, however, mischaracterizes the court's holding in *Kallstrom*.  While the Sixth Circuit did grant a permanent injunction requiring the City of Columbus to warn the plaintiffs before disclosing information found in their personnel files, in *Kallstrom I*, *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), the current case is distinguishable from *Kallstrom I* since the Plaintiff does not have a personnel file.  There is no evidence that the Plaintiff is an employee with the Port Huron Police Department.  Plaintiff states that she was a full time homemaker at the time of her arrest.  (Pl.'s Resp. at 3).  Furthermore, *Kallstrom II* (cited by the Plaintiff above) held

that the undercover police officers did not have a constitutional privacy interest in the information in their personnel files, which included their addresses, disciplinary records, incident complaints, absent a showing that the release of such information would have placed them at a substantial risk of serious bodily harm, possibly death. *Kallstrom II* at 695. The court in *Kallstrom II* further held that the state had a compelling interest in ensuring the accountability of the government and that full disclosure to the press of the information in the personnel files was narrowly tailored to meet the state's compelling interest. *Id*. at 696. The *Kallstrom II* court also held that the City could not refuse to grant the press access to personnel files that were readily assessable to members of the public. *Id*. at 699.

Here, Plaintiff did not have a personnel file; there is no showing that it was clear the disclosure of the Plaintiff's name, her husband's occupation, and Plaintiff's hometown placed her at a substantial risk of serious bodily harm or possibly death, and the information disclosed was public record. Based on the decisions of *Kallstrom I* and *II*, it would not have been clear to the Defendants that disclosure of the Plaintiff's name, her hometown and her husband's occupation would be a constitutional violation. Since the disclosure of the previously named information does not amount to a constitutional violation, nor was it clear that such disclosure was a violation of a clearly established constitutional right, Plaintiff has failed to state a constitutional violation under 42 U.S.C. § 1983.

**V.    CONCLUSION**

Plaintiff has failed to show a constitutional violation has occurred in the disclosure of her information.

Accordingly,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 12, filed December 22, 2005), is GRANTED.

IT IS FURTHER ORDERED that Defendants City of Port Huron, Neil Rossow, and William Corbett are DISMISSED.

                                                s/ DENISE PAGE HOOD
                                                DENISE PAGE HOOD
                                                United States District Judge

DATED: September 28, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2006, by electronic and/or ordinary mail.

                                                S/William F. Lewis
                                                Case Manager